## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 02 2016, 8:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Anna Kirkman
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Commitment of H.F., <br> *Appellant-Respondent,* <br><br> v. <br><br> Eskenazi Health/Midtown, Clinic, <br> *Appellee-Petitioner.* | September 2, 2016 <br><br> Court of Appeals Case No. 49A02-1602-MH-335 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Steven Eichholtz, Judge <br><br> Trial Court Cause No. 49D08-1601-MH-1348 |

**Robb, Judge.**

# Case Summary and Issue

[1] In January 2016, police officers transported forty-seven-year-old H.F. to Eskenazi Health Midtown Community Mental Health ("Eskenazi") after she displayed disruptive behavior at two downtown Indianapolis hotels. An Eskenazi psychiatrist diagnosed H.F. with bipolar I disorder, citing H.F.'s odd behavior, delusions, and illogical thinking. Eskenazi then petitioned for the temporary involuntary civil commitment of H.F. in order to provide treatment. Following a hearing, the trial court ordered H.F. be committed to Eskenazi for a period not to exceed ninety days. H.F. now appeals, raising the sole issue of whether the evidence was sufficient to support the trial court's temporary civil commitment order. Concluding the evidence was sufficient, we affirm.

# Facts and Procedural History

[2] In 2009, H.F. was involuntarily committed to St. Vincent Hospital after suffering from suicidal thoughts and depression. In August 2015, H.F. was arrested after spitting on her husband's face. Following her arrest, H.F. was admitted to Community Hospital North due to her "manic" state. Transcript at 10. In September 2015, H.F. stopped taking her medications and attending her doctor's appointments.

[3] On the morning of January 10, 2016, H.F. visited a downtown Indianapolis hotel. There, she became disruptive and refused security's requests to leave the premises. Police officers arrived and escorted H.F. from the hotel. Unable to

open her vehicle door due to freezing temperatures, H.F. "started licking it to try and open the door." *Id*. at 7. H.F. then travelled to another hotel and again became disruptive. After being escorted out of the hotel, H.F. was apprehended by police officers. Police officers then escorted H.F. to Eskenazi where she received treatment from psychiatrist Sarah Lark. Dr. Lark diagnosed H.F. with Bipolar I disorder and attempted to treat her. However, H.F. refused to take her prescribed medication and her disruptive behavior continued in the hospital.

[4] On January 13, 2016, Eskenazi filed a petition seeking to involuntarily commit H.F. to Eskenazi. On January 19, 2016, the trial court held a hearing on the matter. Dr. Lark testified H.F. exhibited symptoms of delusions and illogical thoughts. For example, when Dr. Lark attempted to discuss Bipolar I disorder with H.F., H.F. began talking about polar bears and igloos. Further, H.F. did not sleep, attempted to have sex with her husband in front of hospital staff, made sexual comments to hospital staff, and could not hold a logical conversation. H.F. had taken only one dose of one of the prescribed medications while hospitalized because she claimed "the medicines collide with her brain and that [Dr. Lark] should give them to the people in Haiti." *Id*. at 14. Dr. Lark opined H.F.'s judgment is severely impaired, and if left untreated, H.F. could be arrested again or relapse into a depressed and suicidal state. Dr. Lark concluded H.F. is gravely disabled, and without treatment, a danger to herself. H.F. also testified at the hearing. On the same day, the trial court noted H.F.'s testimony indicated her thoughts are "very disorganized" and

ordered H.F. involuntarily committed for treatment for a period not exceeding ninety days.[1]  *Id*. at 30.  This appeal ensued.

# Discussion and Decision

## I.  Mootness

H.F. acknowledges her ninety-day involuntary commitment to Eskenazi hospital has expired and therefore this case is moot.  *See* Appellant's Brief at 10-11.  Generally, a case is deemed moot and usually dismissed when a court is unable to render effective relief to a party.  *R.P. v. Optional Behaviors MHS*, 26 N.E.3d 1032, 1035 (Ind. Ct. App. 2015).  Because H.F. has been released from her temporary commitment at Eskenazi, this court cannot render effective relief to her.  *See id*.  However, "Indiana courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of great public interest.  Typically, cases falling in the 'great public interest' exception contain issues likely to recur."  *Id*. (citation omitted). We have previously acknowledged the issue of whether there is sufficient evidence to establish a person is gravely disabled and in need of involuntary commitment is a matter of great public importance that is likely to recur.  *See id*. Therefore, we will address the merits of H.F.'s claim.

---

[1] H.F. has since been released from Eskenazi.

# II. Sufficiency of the Evidence

[6] H.F. argues Eskenazi failed to present clear and convincing evidence sufficient to establish she was gravely disabled. When reviewing a challenge to the sufficiency of the evidence, we look to the evidence most favorable to the trial court's decision and all reasonable inferences drawn therefrom. *Id.* If the trial court's commitment order represents a conclusion a reasonable person could have drawn, the order must be affirmed, even if other reasonable conclusions are possible. *Id.* at 1036.

[7] In Indiana, a person may be involuntarily committed if the petitioner proves by clear and convincing evidence "(1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind. Code § 12-26-2-5(e).[2] Indiana Code section 12-7-2-96 defines "gravely disabled" as,

> a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or

---

[2] H.F. does not challenge whether the evidence is sufficient to support the trial court's conclusion she suffers from a mental illness or whether commitment was appropriate.

behavior that results in the individual's inability to function independently.[3]

In determining whether the totality of the circumstances supports an involuntary commitment, we consider the gravity of the behavior leading to the hospital admission, the behavior in the hospital, and the relationship between problematic behaviors and the person's mental illness. *R.P.*, 26 N.E.3d at 1035.

[8] Here, H.F. has previously been involuntarily committed to hospitals for treatment, most recently in August 2015. Shortly following her release from involuntary commitment in 2015, H.F. stopped taking her medication, which resulted in her current manic state. Given H.F.'s current conduct and condition, Dr. Lark opined H.F.'s judgment is severely impaired. H.F. has again refused to take her prescribed medications, and if this continues, Dr. Lark fears H.F. could be arrested or relapse into a depressed and suicidal state. In addition, as the trial court noted, H.F.'s testimony evidences her incoherent, illogical, and disorganized state of mind. Based on this evidence, a reasonable person could conclude H.F. is gravely disabled and a danger to herself. Therefore, Eskenazi presented sufficient evidence to support the trial court's order.

---

[3] Because section 12-7-2-96 is written in the disjunctive, clear and convincing evidence establishing only one of the two prongs is sufficient to establish H.F. is gravely disabled. We therefore only address the second prong.

# Conclusion

We conclude the evidence was sufficient to support the trial court's involuntary commitment order. Accordingly, we affirm.

Affirmed.

Mathias, J., and Brown, J., concur.